And you may begin whenever you're ready. Thank you, Judge. Good morning. My name is Ashley Bauer, and I'm representing the petitioner, Jose Rolando Duvon. I'd like to reserve around three minutes for rebuttal. This petition involves four questions of law and one challenge to a factual finding. The first question of law is whether this Court has jurisdiction. Under 8 U.S.C. 1252d, this Court has jurisdiction over questions of law. And under 8 U.S.C. 1252a,b,2, this Court maintains jurisdiction over Section 1158, Asylum Claims. This Court clearly has jurisdiction. None of the cases that the government submitted suggest otherwise. The second question of law is whether the agency erred in holding that Jose's particular social group was not eligible for asylum. Hold on a second. On the first issue, is that whether we have the authority to decide the social group issue? Is that what you mean by jurisdiction? Indeed, Your Honor. Okay. The way I look at this, the immigration judge clearly fined and concluded, both finding and a conclusion, that means facts and law, that a criminal street gang is not a particular social group protected by international domestic law pertaining to asylum, correct? Your Honor. And then the BIA affirmed. Correct, Your Honor. So don't we have a finding by the BIA, a conclusion of law by the BIA that street gangs aren't social groups? Indeed, we do. Okay. Next. So the social group Telegraphing. Yes. To some other people. Thank you very much, Your Honor. I appreciate that. Counsel. Yes. We're addressing social group, and I have one particular question. Yes, Your Honor. Is there anything in the legislative history that's not cited in the brief where Congress or the committee had any discussion of the meaning of social group? The trouble I have is we could extend that to any band of criminals, whether they're I can hear what the next case is going to be from the criminal calendar. Your Honor raises a very good point in that asylum is not meant to be a very broad-based grant of entry into the United States to any group based on simply a demographic factor. Now, what the difference is here is that this is a social group as defined under the Hernandez-Montiel test. Well, I can't believe that. I think if you asked anybody on the legislative side of the aisle, do you intend to include groups like this, how many hands do you think would go up and say, yes, street gangs in social groups? I do think that there are. None. I mean, would this cover the Taliban, Al-Qaeda, the Ku Klux Klan? I mean, the problem is you're not dealing with a social group. You're dealing with an antisocial group. Congress did not intend specifically to include a group that is an antisocial group, as Your Honor has pointed out, but nor did they intend specifically to deny that group. Instead, what they did is they put a curve out for criminals. You know, Abraham Lincoln was a heck of a good lawyer, and he used to tell a story. And the story was he asked somebody, if you call a dog's tail a leg, how many legs does a dog have? And the person answered five. And Lincoln said, no, calling a tail a leg doesn't make it a leg. And you're trying to call this crowd a social group, and that seems to fly in the face of the denotation and connotation of the term and the modifier social. That assumes, Your Honor, that you find, as the I.J. did, that gangs serve a purely criminal purpose. They don't? No, they do not, Your Honor. And the record suggests that they do not. Well, it's probably survival, but in the course of surviving, they're bandits, they're robbers, they're muggers, they're you name it. That's the trait of the social group that you're talking about. The trait is that the group provides camaraderie, it provides fraternity. So the Taliban would qualify. If we had Taliban people here saying, don't send me back because the current Iraqi government will do bad things to me, the current Afghanistani government will do bad things to me, the Taliban would qualify. Al Qaeda would qualify. I have to admit, Your Honor. The Russian mafia would qualify. You know nothing about the Taliban, I have to admit. In terms of the social group at issue here, gangs, I would submit that they don't serve a purely criminal purpose. You look at every word that's been coming out of Congress since the 1960s about these kinds of groups, and all they've done is pass criminal statutes to try to stop them, prohibit them, get rid of them, take away their assets. And if someone violates one of those criminal statutes, then, yes, we exclude them for the violation of a criminal act. Why can't we anticipate they will? They have been for their life, lifestyle, where they come from. Oh, I don't think it's fair to assume that because people are a member of a group, they will behave one way or the other. I have a more technical question, and that is, in addition to its decision in this case, the BIA recently issued a case in AME and JGU in which the BIA expanded upon the definition of social group and tried to explain what the requirements are. How does your argument square with that decision to which I presume we owe deference? Indeed, Your Honor, that was a case where the BIA was looking at a Second Circuit remand, and the – I don't think – we do owe deference, but the case, in terms of the way it applies here, same factors. We look at the voluntary associational elements, we look at the common mutable characteristics, we look at the fact that there's nothing immutable about the characteristic of gang membership. Of former gang membership, I would submit there is. Well, it's not immutable in the sense that one is a shared property. Female or male or tall or short, but the other thing that the BIA seemed to be focusing on was a shared characteristic that is – I'm not going to be able to parrot it exactly – but inherent to the sort of dignity and well-being of the human being. And I mean, I don't understand how your proposed group fits those criteria. Our proposed group of former gang members who have joined gangs not entirely, as the I.J. assumed, for criminal purposes, but rather for membership, for fraternity, for protection, for power, for identity, does fit those purposes. And by looking at former gang members as opposed to just gang members, what you're looking at is whether or not this person can change that past experience, that past identity. And who they identify as can't. If those were the characteristics of a gang, why would there be any pressure in terms of the criminal enforcement of the laws of the foreign jurisdiction against those people? I'm sorry, Your Honor. Could you rephrase? I mean, they're not doing anything criminal, if you're correct. Well, the – Criminality is not part of any of those characteristics you just listed. That's correct. There may be – I think what you're doing is framing the definition to try and keep your client in the United States. There may be elements within a gang where some members participate in criminal elements and some members do not. Here, the final point – But they contribute their accessories to the fact. I'm not sure if you could build it that broadly, because within, you know, within any organization, someone could be committing a crime that someone else does. I'm a lookout for somebody that's holding up a brink truck. I'm part of the operation. Don't you agree? If you were the lookout in that, yes. And would that be my social group, the robbers and the lookout? A social group of lookouts? Yeah. I don't think – Providing camaraderie and friendship? I don't think that the lookouts would be the social group in that case. But if you were part of a social group and you participated in a crime, then the correct inquiry is the second part of the statute, which says if you've participated in a crime, then you are not eligible. Going back to my first question, is there any regulation of record that's been adopted by the BIA independent of case decisions? No, Your Honor, not that I'm aware of. And is there anything in the congressional record independent of what you've been saying that lays down Congress's – some clue to Congress's intent? There is not. And I know that I only have a minute and a half. I'd like to reserve it for a vote. You may do that. Thank you very much. We'll hear from the Governor. Good morning, members of the Court. I'm Paul Fiorina for the Respondent. Before I get started, I wanted to inform the Court that the Department of Homeland Security has filed with the Board a motion to reconsider its decision, its affirmance without opinion, to allow the Board an opportunity to speak to these issues that we've been discussing in light of the new case law that Judge Graber discussed with counsel. So the idea that the – Can you say that again? The Department of Homeland Security is trying to reopen this case? To allow – yes, to allow the Board to speak on these issues in the first instance. So I assume you're asking us to defer submission on this case until the decision is made. Not specifically, Your Honor, because we – because what we're asking – Do you have an agreement with counsel to remand so that the Board can take jurisdiction and further develop a rule? Yes. We believe that – Do you have a stipulation with counsel? I'm shaking your head no. All right. But as we argued – That's the case we have. Right. As we argued in our brief, the immigration judge denied asylum on two completely independent grounds. He found that the petitioner had committed serious nonpolitical crime. And independent of that, he found that a criminal street gang is not a social group. Because the Board affirmed without opinion, we don't know which basis of the immigration judge's decision the Board was affirming. We looked at the immigration judge's decision? Yes. But, again, the Board affirmed the result without further analysis. That's what affirmance without opinion does. Well, it doesn't – doesn't our case law say that an affirmance without opinion is essentially a pass-through of the immigration judge's opinion, period, whatever it says, good, bad, or indifferent? So if the immigration judge said you lose because of A and you lose because of B both, and the BIA says, terrific, we like it all, I don't understand what you're asking us to do. Well, we – this Court's decision in Alonzo, which – which said that if the Board affirms that an IJ's decision based on two grounds – One of which we have jurisdiction and one of which we don't. But that's not our problem here. It's our position that that is the situation here. Our position is that the serious nonpolitical crime is, just as a particularly serious crime, a discretionary decision. But the question – the question whether the correct legal standard was applied to answer that question is a question of law. That's – that's correct. So that, as I understand it, that is the issue that the Petitioner is raising, not the discretionary call of – if the correct legal standard had been applied, I think the Petitioner's argument, as I understand it, would concede that there's no jurisdiction. But I understand the argument to be that the immigration judge simply applied the wrong law as a matter of law. So if that's correct and we have jurisdiction of both halves, where does that leave your request for a Lazzaro-type remand? We still think it should go back to allow the Board to discuss this important social group issue in the first case. But I wanted to take issue with one of the – They've already – but they've already discussed it in another case. So – They have an issue of precedent decision. And under the Supreme Court's decision in Ventura, in the spirit of that case, the Court should allow the agency to issue a precedent decision in the first instance. And – and AME is not a precedential decision in your view? Well, at least not in – in – we don't know – we don't know whether the Board was affirming which social group the Board was affirming. And I.J. held that the Petitioner was a – a street gang is not a social group. When Petitioner argues to the Board and argues to the Court, they're talking about a former member of a street gang, they're talking about a visibly known former member of a street gang. I think we're not communicating well. My question to you is a different question. The Board's decision in INRI, AME, and JGU, which you yourself brought to our attention in your 28J letter, is that a precedential decision or not? And if not, why not? Well, yes, it is a precedential decision. Okay. So since the Board has already issued a precedential decision discussing its understanding of the concept of a social group and what you have to show to be in a social group, I don't understand why we would have to remand for them to do that again. Because we don't know if the Board affirmed the immigration judge's decision that he committed a particular – a serious nonpolitical crime. We don't know if the Board affirmed the immigration judge's discretionary denial of asylum. You're talking about this case? Yes. But we have a precedential decision. Yes, with respect to the social group issue. But as I – as our position is, and I – and – You know, what's going on? I mean, why don't you want us to hear this case? Because we think that the way that the immigration judge's decision was affirmed without opinion leaves open whether – we don't know whether, in fact, the Board had affirmed which basis of the immigration judge's decision. Sure we do. They affirmed both, unless we know to the contrary. Well, the immigration judge had three. He said – Oh, he affirmed – the point is the same. If they – if they adopted it in toto, they adopted it in toto. I don't understand what's ambiguous about that. And if we have – I understand the problem if we don't have jurisdiction over all the things. But we – if we have jurisdiction over each of the questions, I don't understand the problem with just deciding the case. Well, our position is that the Court doesn't have jurisdiction over the nonpolitical crime issue because there are no standards. The serious nonpolitical crime standard is similar to but different from the serious nonpolitical crime. Are you familiar with the Arteaga case that's currently pending in the Ninth Circuit? Not – no, I'm not, Your Honor. Well, you should. It's the same issue. Identical. And nobody's made any request in that case. And I'm on the panel to do anything except decide the issue. They've come forward and they said decide the issue. And we plan to. So now all of a sudden, you're turning – you're going in a different direction. I wasn't aware of the Arteaga case involving a serious nonpolitical crime. If I may turn to the Convention Against Torture claim, unless the Court has any further questions on this issue, we believe that the Petitioner fails to show that the record compels a conclusion that he would be tortured by the government. The facts of this case show that he is no longer a member of the gang that he used to be a member of. He has – Why isn't that an immutable characteristic, just as the former landowner or the kinds of examples that the BIA has given? It's certainly – at the front end, it's not immutable. But at the back end, after one has left, there's sort of no going back in time. Well, we do take the position that former gang membership is an immutable characteristic. But that doesn't end the inquiry. As the Board decided in the AME and the JGU case, there's additional criteria involving social visibility and involving particularity, which, in this case, this Board did not address. So to give the Board a chance to address new case law, that's one of the reasons why we're asking the Court to send it back. But again, with regard to the torture claim, Petitioner is getting older every day. He's no longer a youth. He has gotten rid of his tattoos. And the evidence in the record shows that, though the police do pursue gang members, much of the pursuit is involved with legitimate law enforcement. And the fact that he was able to hide his gang membership from his mother undercuts his assertion that he would be visible to the police and would be pursued and tortured on that basis. The subject of your questions concludes our argument. Thank you, counsel. Thank you, Your Honor. Just a few quick points. The first is that the government has just admitted that former gang membership is immutable. I think there was a misunderstanding of the AME case because the AME case said, the IJ said, wealth is not immutable. Wealth comes, wealth goes. And so since that's not immutable, let's look at fundamental identity. Judge Graber, you've hit him on the head. Former gang membership is immutable, government agrees. And once you've been in that position, you can't change it. It is part of your identity, as I argued before. The other thing that the government just mentioned is that he, they said he doesn't have any tattoos right now. That's actually incorrect. He's still tattooed on his hands and his arm. And the government has, under his Convention Against Torture claim, made the interesting point that he's now no longer 18, 17, as he was when he entered the country. I'd say let's look at GFOR. I apologize if I've mispronounced it. I'm sorry. GFOR. GFOR. Of the case? GFOR. Okay. Sorry about that. And that's a case where we look at the conditions as they existed. We don't hold it against someone because the government took years to formulate the right decision. That was a changed circumstance, changed country circumstances case. But the same rationale applies to a person who is aging. And the reason why that's most important is because this is a child, and children need special protection when they are seeking asylum. Regardless of those characteristics, isn't the burden on a person coming into the country the burden to show that it has the qualifications to remain here? Yes, Your Honor, and Jose did. If the burden is not shown clearly, then I take it that the deportation order was proper. If you have – if you find that we did not meet our burden in showing a social group, in showing that juvenile delinquency is simply not a crime, and in showing that the conditions in Honduras do not amount to torture, then, yes, we've failed. And there is no other argument other than deportation, even though it will mean that he will die when he goes back. I know, but I'm just trying to put the – failing everything else, the burden of proof is yours. The burden – the burden actually is ours to begin with. Yes. Once we make certain showings, then it switches to them to rebut them. But, yes, it is – it is our burden. Thank you very much. Thank you, counsel. The case just argued is submitted.
judges: Trott, Graber, Beezer